UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| SIE ERVINE, et al., | Case No. 2:10-CV-1494 JCM (GWF) |
| Plaintiff(s), | ORDER |
| v. | |
| DESERT VIEW REGIONAL MEDICAL CENTER HOLDINGS, LLC, et al., | |
| Defendant(s). | |

Presently before the court are plaintiff Sie Ervine's motion for summary judgment, (ECF No. 91) defendants Georges Tannoury, M.D.—a business entity—and Georges Tannery's (collectively, "Tannoury") motion for summary judgment, (ECF No. 92) and defendant Desert View Regional Medical Center Holdings, LLC's ("Desert View") motion for summary judgment (ECF No. 93). These parties filed corresponding responses (ECF No. 94, 95, 96, and 97) and replies (ECF No. 98, 99, 100, and 101).

**I.     Background**

As the litigants are familiar with the facts of this case, only a short summary thereof and a discussion of recent procedural history is necessary for present purposes.

Mr. Ervine filed his amended complaint on behalf of himself and as executor of his deceased wife's estate against the defendants on September 14, 2010, alleging: (1) violations of § 504 of the Rehabilitation Act, 29 U.S.C. § 794; (2) the Americans with Disabilities Act, ("ADA") 42 U.S.C. § 12101 et seq.; (3) negligent infliction of emotional distress; and (4) intentional infliction of emotional distress. Generally, plaintiff alleges that these claims are a result of defendants' unwillingness or refusal to provide a sign language interpreter for plaintiff's wife, who was deaf. (ECF No. 1).

**James C. Mahan**
**U.S. District Judge**

On December 8, 2011, this court granted a motion to reconsider its ruling on summary judgment, holding that plaintiff's claims were time barred. (ECF No. 64). That order was based on Desert View's production of an authenticated transcript of Mr. Ervine's deposition that was not available to the court for its first order regarding summary judgment. (*Id.*). Next, this court determined that Mrs. Ervine's statements to the Deaf and Hard of Hearing Advocacy Resource Center ("DHHARC") recorded in a DHHARC logbook were not hearsay pursuant to Federal Rule of Evidence 801(d)(2)(B) because "Mr. Ervine's representation regarding Mrs. Ervine's contacts with the DHHARC establish that he has manifested an adoption and/or belief in the truth of Mrs. Ervine's statements contained within the logbook." (ECF No. 64).

Plaintiff then appealed this court's decision in that order to the Ninth Circuit Court of Appeals. On May 29, 2014, the Ninth Circuit vacated the order in part, reversed it in part, and remanded the case with instructions to dismiss plaintiff's claims brought under Title III of the ADA without prejudice for lack of jurisdiction. *Ervine v. Desert View Regional Medical Center Holdings, LLC*, 753 F.3d 862, 871 (9th Cir. 2014). Next, that court articulated a rule for considering the accrual of claims under § 504 of the Rehabilitation Act. *Id.* That court also returned plaintiff's state law claims and did not rule on this court's evidentiary findings. *Id.* at 871 n.5. The Ninth Circuit declined to decide whether any alleged violations were meritorious. *Id.*

## II.     Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went

**James C. Mahan
U.S. District Judge**

- 2 -

uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). Moreover, "[i]n such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *Id.*

By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the non-moving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

### III. Discussion

#### a. ADA Title III claims

In its decision, the Ninth Circuit determined that plaintiff lacked standing to bring claims under Title III of the ADA, explaining that "Mr. Ervine has not shown a real and immediate threat that he will be denied effective communication by Desert View or Tannoury either as a patient in his own right or as a companion to another patient." *Ervine*, 753 F.3d at 868. Therefore, plaintiff's claims under Title III of the ADA are to be dismissed for lack of subject matter jurisdiction, pursuant to the Ninth Circuit's decision. *Id.* at 871.

#### b. Section 504 of the Rehabilitation Act

Upon appellate review, the Ninth Circuit articulated the rule that "[s]o long as an alleged violation of Section 504 of the Rehabilitation Act is a discrete and independently wrongful discriminatory act, it causes a new claim to accrue and a new limitations period to run." *Id.* at 870.

**James C. Mahan**
**U.S. District Judge**

Indeed, "[a] claim under the Act will not be untimely merely because similar, even identical, violations of the Act occurred outside the statutory period." *Id.*

Applying this rule to the facts of the case, the Ninth Circuit concluded that "[b]ecause each and every discrete discriminatory act causes a new claim to accrue under Section 504 of the Rehabilitation Act, any discriminatory acts that Desert View or Tannoury took after September 1, 2008 are actionable." *Id.* at 871 (footnote omitted). Applying this rule, the court now examines plaintiff's motion.

> *i. DHHARC logbook*

As an initial matter, the Ninth Circuit "le[ft] for the district court to consider the evidentiary sufficiency of the claims against Desert View." *Id.* at 871 n.5. This court ruled on December 8, 2011, that Mrs. Ervine's statements in the DHHARC logbook were not hearsay because Mr. Irvine had manifestly adopted those statements. *See* (ECF No. 64 at 3–4); *see also* F. R. Evid. 801(d)(2)(B). Therefore, this court may consider the contents of the DHHARC logbook for the purposes of these present motions for summary judgment. *See Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment."); *see also* Fed. R. Civ. P. 56(c).

> *ii. Disputes of material fact*
>> A. *Plaintiff's motion for summary judgment*

The elements of a § 504 violation of the Rehabilitation Act are: (1) plaintiff is a "handicapped person" per the Rehabilitation Act; (2) he is "otherwise qualified" under that act; (3) that "the relevant program receives financial assistance;" and (4) "the defendants' refusal to provide qualified interpreter services impermissibly discriminates against [plaintiff] on the basis of [plaintiff's] physical handicaps." *Bonner v. Lewis*, 857 F.2d 559, 562–63 (9th Cir. 1988) (citing *Greater Los Angeles Council on Deafness v. Zolin,* 812 F.2d 1103, 1107 (9th Cir.1987)) (finding that the significance of a lack of American Sign Language ("ASL") interpreters for a disabled inmate communicating with a doctor "is a factual question."). Defendants argue that the fourth element cannot be decided through summary judgment because whether effective communication existed between the defendants and the decedent is a question of fact or is otherwise disputed. (*See, e.g.*, ECF No. 94 at 5–7).

**James C. Mahan**
**U.S. District Judge**

- 4 -

Plaintiff's reply (ECF No. 98) instead argues that defendants' refusal to provide an interpreter is dispositive regarding his Rehabilitation Act claim because the failure to consider an interpreter "without regard or investigation to the Plaintiff['s] need" violates the Rehabilitation Act as a matter of law. (*Id.* at 8). Plaintiff's argument is unpersuasive for several reasons, some of which will be discussed in the "per se violation" subsection below.

First, plaintiff asserts that *Bonner* should not apply to the present analysis. *Id.* This court disagrees. In *Bonner*, the Ninth Circuit reversed a district court's grant of summary judgment for a Rehabilitation Act claim brought by a deaf person who suffered from "severe progressive vision loss" because there was a dispute of material fact about "whether [a] prison official's refusal to provide qualified interpreter services impermissibly discriminated against [plaintiff]." 857 F.2d at 563 ("Consideration of the fourth element, whether the prison official's refusal to provide qualified interpreter services impermissibly discriminated against [plaintiff], raises other genuine issues of material fact. Is [plaintiff] able to communicate effectively without the use of a qualified interpreter?").

Moreover, the Ninth Circuit specifically held in that case that if defendants nevertheless provided "adequate communication" through other means, "no discrimination could have occurred." *Id.*; *see also Alexander v. Choate*, 469 U.S. 287, 300 (1985) (approving of the reasoning in *Southeastern Community College v. Davis*, 442 U.S. 397, 412–13 (1979), stating that "while a grantee need not be required to make 'fundamental' or 'substantial' modifications to accommodate the handicapped, it may be required to make 'reasonable' ones."). The court finds this instruction to be controlling and applies it to this case.

Because there can be no discrimination here if communication is adequate, plaintiff's application of the deliberate indifference standard is fruitless unless he shows that the communication between defendants and decedent was inadequate. *See Duvall v. County of Kitsap*, 260 F.3d 1124, 1139–40 (9th Cir. 2001) ("To recover monetary damages under . . . the Rehabilitation Act, a plaintiff must prove intentional discrimination on the part of the defendant." (footnote omitted)).

          1.   *Violations alleged against Desert View*

After applying the Ninth Circuit's September 1, 2008, limiting date, plaintiff alleges that Desert View violated the Rehabilitation Act on multiple days. (ECF No. 91). Applying the *Bonner* standard, plaintiffs would have to argue how the forms of communication used by defendants were

**James C. Mahan**
**U.S. District Judge**

- 5 -

inadequate, not just that defendants did not provide an interpreter. *Bonner*, 857 F.2d at 563. Therefore, allegations that do not address defendants' chosen form of communication with the decedent are not entitled to summary judgment. *See C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000).

This court will address these allegations by the date on which they are alleged to have occurred. Upon review of the violation dates offered in plaintiff's motion for summary judgment, the plaintiff has failed to discuss how Desert View's actual methods of communication were inadequate on the following dates:[1]

First, plaintiff's February 7, 2009, allegation makes no indication how the communication method used on that date was inadequate. *See Bonner*, 857 F.2d at 563; (*see also* ECF No. 91 at 5–6). The July 24–August 3, 2009, allegation indicates that medical notes suggest there was some difficulty understanding the decedent, there was a need for an ASL interpreter, and decedent had made a previous request for an interpreter. (ECF No. 91 at 7–8). Although there seems to be more evidence here than in some of plaintiff's other allegations showing an impediment to communication, these factors do not necessarily equate to "inadequate" or "ineffective" communication.

Plaintiff's February 11, 2009, and July 24–August 3, 2009, allegations against Desert View also fail to address the forms of communication used by defendants. *Id.* at 6–7. This court recognizes plaintiff's point that a July 25, 2009, Desert View document states "deaf – need ASL . . . written." (ECF No. 91-4 at 20). However, this statement is written on a line following an "Identified Learning Needs" heading. *Id.* While this statement is probative that the decedent may have needed an interpreter for adequate communication, this heading is clustered among other general categories of information, such as "Living arrangements/support systems," "Religious Practices," and other categories. *Id.* In short, this exhibit, by itself, gives the court too little context of the circumstances of both its writing and the exact implications of what is being written to entitle the plaintiff to summary judgment on his July 24–August 3, 2009, claim.

---

[1] As an initial matter, Desert View asserts that plaintiff's allegations regarding allegedly denied requests for an interpreter on September 25, 2008; October 27, 2008; December 25–27, 2008; and April 1, 2009, have been introduced for the first time after the close of discovery. (ECF No. 95 at 5). The court generally agrees with Desert View that the introduction of new instances of alleged violations of the Rehabilitation Act after the discovery period has terminated is unduly prejudicial. Therefore, the court will not consider those dates in the present analysis. The court additionally notes that even if the alleged violations asserted to have occurred on those dates were to be considered, summary judgment would not be granted on those assertions for plaintiff's failure to address those methods of communication the defendants used when treating Mrs. Ervine.

**James C. Mahan**
**U.S. District Judge**

- 6 -

Plaintiff's August 20–23, 2009, allegation against Desert View asserts that "Dr. Bibby noted that he was unable to get an adequate medical history or exam because Mrs. Ervine is a 'Deaf-Mute.'" (ECF No. 91 at 8). However, the cited medical record indicates no causal connection between communication difficulty and the medical professional's notation of the defendant's disability. (ECF No. 91-4 at 18). It simply states "Deaf/mute" on a line devoid of any other non-numeric characters. *Id.* Next, plaintiff asserts that decedent was sent home during this treatment to use Video Relay Service to ask a doctor questions. (ECF No. 91 at 8–9). However, plaintiff does not offer any legal reason why that action was improper. In conclusion, there is no showing of inadequate communication; therefore, there consequently is no showing of discrimination. *See Bonner*, 857 F.2d at 563.

2.  *Violations alleged against Tannoury*

Applying the same analysis as above, the plaintiff has failed to sufficiently discuss how the methods of communication that Tannoury actually used were inadequate or otherwise ineffective on the following dates asserted in plaintiff's motion for summary judgment: (1) September 8, 2008; (2) October 6, 2008; (3) November 17, 2008;[2] (4) December 2, 2008; (5) December 19, 2008; (6) December 30, 2008; (7) January 23, 2009; (8) February 3, 2009; (9) February 24, 2009; (10) March 31, 2009; (11) May 5, 2009; (12) May 8, 2009; (13) May 28, 2009; (14) June 18, 2009; (15) July 7, 2009,[3] (16) July 13, 2009; and (17) July 30, 2009. (ECF Nos. 91 at 10–15).

Without more, the alleged existence of a preliminary agreement or communication between the decedent and Tannoury appears to have little probative value to the present issue of whether there are no disputes of material fact for summary judgment regarding the question of the reasonableness or effectiveness of communication between Mrs. Ervine and Tannoury at each instance of treatment. (ECF No. 98). Thus, as above, there is no showing of inadequate communication or discrimination that would entitle plaintiff to summary judgment.

---

[2] This alleged violation appears to also address the question of whether Tannoury violated the Rehabilitation Act as a result of insufficient office policy. This line of argument is discussed below.

[3] Plaintiff mentions "pen and paper" in this allegation, thus addressing the method of communication. (ECF No. 91 at 14). However, plaintiff fails to make a sufficient showing that the topic of communication between the decedent and medical professionals necessitated more or different forms of communication than what could be accomplished in writing. *Id.*

**James C. Mahan**
**U.S. District Judge**

- 7 -

### 3. *Per se violation of the Rehabilitation Act*

Plaintiff argues that Desert View & Tannoury violated § 504 per se because defendants lacked a designated person responsible for ensuring compliance with the Rehabilitation Act, they lacked a written policy or other procedure for communicating with deaf patients, and because there was no administrator that clearly had the authority to approve the hiring of an interpreter other than the hospital chief executive officer.  (ECF Nos. 91 at 16–23, 99-3 at 14).

First, plaintiff's argument under § 84.4 and § 85.21 fails because—as discussed above—there is an insufficient showing of discrimination based on inadequate or ineffective communication.  *See* 45 C.F.R. § 84.4 (2005); *see also* 45 C.F.R. § 85.21 (1997).

Next, Federal Rule of Civil Procedure 32(a) applies the Federal Rules of Evidence to deposition testimony.  Federal Rule of Evidence 602 states "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."  Indeed, "[i]t is not enough for a witness to tell all she knows; she must know all she tells."  *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001).

Plaintiff offers his argument regarding defendants' alleged failure to otherwise comply with § 504 by citing to the deposition of Janet Pinner.  (ECF Nos. 91, 99).  Upon review of the record, the portions of the deposition transcript provided to the court do not show that Ms. Pinner possessed adequate knowledge to testify on these matters.[4]  Nor does it appear that defendants have conceded this point.  (*See* ECF No. 101 at 3–4).  For example, even though Desert View recites Ms. Pinner's deposition response in its reply brief, "I am currently employed at Desert

---

[4] On page 13 of Ms. Pinner's July 12, 2011, deposition, there appears to be the question "are you familiar with this policy?"  (ECF No. 99-3 at 3).  However, there is little contextual clarity regarding which specific policy is being discussed.  (*See id.*).  On pages 6 and 29–30 of the same deposition, Ms. Pinner acknowledges that she is the "risk manager," yet the scope of this responsibility is unclear.  (ECF Nos. 95–6 at 4, 99-3 at 10–11).  This role is further made unclear by the deposition's discussion regarding the chief operating officer's responsibility to implement policy and the question of who would be responsible for offering an interpreter policy.  (*See* ECF No. 99-3 at 15–16).  Although the court notes that Ms. Pinner is indicated in Desert View's fourth supplemental list of witnesses as expected to testify about "hospital policies," the court believes that this statement is too vague to overcome the lack of evidentiary foundation regarding her ability to testify to these specific matters.  (ECF No. 96-5 at 11).  Further, the discussion of the hospital reference guide indicates that the indicated document's relevance was *how* to obtain an interpreter, not *to* obtain an interpreter.  (ECF No. 93-1 at 75–76).  Thus, there is no admission of competency by plaintiff.  In sum, defendant has not offered evidence sufficient to show a per se violation of applicable regulations.

View Hospital as the infection control, employee health, quality assurance, and risk manager[,]" there is little in the record that indicates the duties a "quality assurance[] and risk manager" would perform with respect to the present issue. (*Id.*).

Therefore, plaintiff has failed to show that Desert View violated 45 C.F.R § 84.7 because the evidence in front of the court in this case provides no indication of Janet Pinner's competency to testify regarding either the "[d]esignation of a responsible employee" or the "[a]doption of grievance procedures" as provided in § 84.7. Additionally, plaintiff has similarly failed to show, for lack of evidence, that Desert View's "criteria or methods of administration" were in violation of 45 C.F.R. § 84.4(b)(4).

These arguments also fail when applied to Tannoury; nothing in the DHHARC log cited by plaintiff shows that no Tannoury employee had been appointed to implement the requirements of § 504, and there has similarly been no showing of discrimination by those defendants. (ECF No. 91 at 22–23).

Plaintiff's argument that Tannoury's alleged practice of not providing interpreters is a violation of § 504 is not sufficient to show that effective communication did not otherwise occur. (ECF No. 98 at 11). Indeed, plaintiff's references to 45 C.F.R. § 84.52(b) fails to make his point. (*Id.* at 12). Section 84.52(b) does not mandate the use of interpreters; instead, it requires that applicable parties "shall take such steps as are necessary" to fulfill that regulation's requirement. 45 C.F.R. § 84.52 (2005). As stated above, plaintiff has failed to make an uncontested showing that the defendants' chosen form of communication was not sufficient. Therefore, the plaintiff has not shown that this regulation has been violated.

Next, plaintiff argues that 45 CFR § 84.52(d) requires "appropriate auxiliary aids to persons with impaired sensory, manual, or speaking skills, where necessary to afford such persons an equal opportunity to benefit from the service in question." While plaintiff indicates that auxiliary aids include interpreters, they also include "other aids for persons with impaired hearing or vision." *Id.* Therefore, a refusal to provide an interpreter is not a clear violation of § 84.52(d). While samples of Mrs. Ervine's written communication indicates the possibility of some apparent written limitation, a finding regarding the decedent's ability to communicate is properly left to a jury. *See Bonner*, 857 F.2d at 563.

Finally, defendant misstates the test for judicial deference to administrative agency interpretation developed in *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837,

842–844 (1984). (ECF No. 97 at 14–15). However, even accepting some of plaintiff's quoted language from the Department of Health and Human Services at its face, there would still be a similar dispute of material fact as to whether the communication provided by defendants was "effective" for the same reason as above—that there has been no discussion of the actual communication process utilized by defendants. (ECF No. 91 at 16–17). Further, *Bonner* was decided after plaintiff's cited regulatory guidance was created. *See* 857 F.2d 559; (ECF No. 91 at 16–17).

Plaintiff's position also faces opposition; defendants argue that communication with Mrs. Ervine was effective or adequate. For example, Tannoury states in his deposition that "I never ever had any [] not even 1 percent difficult communicating with her, meaning every consultation, we got our point across and we understood what she wants, regardless of the time that was needed." (ECF No. 98-2 at 2; *see also* ECF No. 94 at 9–13). Indeed, Desert View submits that it "instead established effective communication through other auxiliary aids that had proven effective." (ECF No. 101 at 10; *see also* ECF No. 95 at 24). Therefore, plaintiff has not surmounted his burden to show that there is no genuine issue of disputed material fact. *See C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000); *see also Duffy v. Riveland,* 98 F.3d 447, 454–455 (9th Cir. 1996) (finding genuine issues of material fact in a Rehabilitation Act claim). Accordingly, plaintiff's motion for summary judgment is denied.

*B. Defendants' motions for summary judgment*

Defendants' motions for summary judgment similarly cannot avoid a dispute of material fact. Although plaintiff's motion for summary judgment failed in large part because he did not address the actual means of communication used in the course of the decedent's treatment, he does indicate some important facts related to his wife's ability to communicate.

First, the plaintiff's assertions that decedent had difficulties understanding or using the English language is potentially demonstrated in the DHHARC notes. (ECF No. 91-3 at 16). A September 30, 2009, note indicated that decedent emailed Jeffrey Beardsley of the DHHARC. *Id.* Beardsley indicates that he is quoting the decedent when he writes "I am wonder any luck your supervisor about interpreter for my Doctor ?? My appt Oct 6 and time 8 15 am." *Id.* This writing could support some doubt regarding the decedent's ability to effectively communicate through writing without an interpreter.

**James C. Mahan**
**U.S. District Judge**

Next, it is clear that the decedent attempted to enlist the services of an interpreter throughout the course of her treatment. (ECF No. 91). Mrs. Ervine even solicited help from the DHHARC to help explain the importance of an interpreter's presence during her medical appointments. (ECF Nos. 91-3 at 16, 97 at 4). Moreover, plaintiff has asserted that interpreters were requested for appointments with Desert View and that these requests were fruitless. (ECF No. 91).

Therefore, defendants' motions for summary judgment, (ECF Nos. 92–93) also fail because there is a genuine dispute of material fact regarding the significance of an ASL interpreter's absence. *See Bonner*, 857 F.2d at 563; *see also* Fed. R. Civ. P. 56(a).

c.  *State law claims*

Plaintiff's amended complaint also alleges negligent infliction of emotional distress ("NIED") and intentional infliction of emotional distress. (ECF No. 4 at 13–14). Parties argue whether the state claims may have been abandoned or waived as a result of the appeal in this case. (*See, e.g.*, ECF No. 92 at 12–13).

The Ninth Circuit opinion in this case states: "Because we are returning the Rehabilitation Act claims to the district court for proceedings not inconsistent with our opinion, we also return the state law claims, which no party has discussed." *Ervine*, 753 F.3d at 871. This court reads this language as mandating that the state claims be addressed in the present summary judgment analysis.

i.  *Negligent infliction of emotional distress*

Because plaintiff's claim is based on his injury as a witness and not as a direct victim, plaintiff's use of the rule in *Grotts v. Zahner*, 989 P.2d 415, 416 (Nev. 1999), is appropriate. *See also Star v. Rabello*, 625 P.2d 90, 92 (Nev. 1981); *compare Grotts*, 989 P.2d at 416, *with Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1387 (Nev. 1998) (considering an NIED claim based on acts committed against the plaintiff). Accordingly, the elements of NIED for this claim are: (1) plaintiff's location near the scene; (2) plaintiff's suffering an emotional injury resulting from the "contemporaneous sensory observance of the accident;" and (3) plaintiff "was closely related to the victim." *Grotts*, 989 P.2d at 416; *see also* (ECF No. 91 at 28).

However, plaintiff was present at his wife's treatment only three times. (ECF No. 95-2 at 5–10). Accordingly, plaintiff can only assert this claim against Desert View for those three

James C. Mahan
U.S. District Judge

- 11 -

instances because he was otherwise not "near the scene" or did not have "contemporaneous sensory observance" of her treatment and communication with medical professionals. *See Grotts*, 989 P.2d at 416.

Moreover, there is no clear showing of some kind of "accident." If the mode of communication used by defendants was proper, there can be no showing of any wrongdoing. As above, all parties have shown there are disputes of material fact underlying the question of defendants' choice of communication methods. Therefore, summary judgment cannot be granted for either party, except to restrict the scope of this claim against Desert View to instances where plaintiff was present with his wife during her medical treatment.

> ii.  *Intentional infliction of emotional distress*

> To state a claim for intentional infliction of emotional distress, a plaintiff must show: (1) defendant acted in an extreme and outrageous manner, (2) defendant intended to or recklessly disregarded the probability that his conduct would cause plaintiff emotional distress, (3) plaintiff actually suffered extreme or severe emotional distress, and (4) defendant's conduct caused plaintiff's distress.

*Mazzeo v. Gibbons*, 649 F. Supp. 2d 1182, 1201 (D. Nev. 2009); *see also Miller v. Jones*, 970 P.2d 571, 577 (Nev. 1998).

Indeed, "[e]xtreme and outrageous conduct is conduct which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *Okeke v. Biomat USA, Inc.*, 927 F. Supp. 2d 1021, 1029 (D. Nev. 2013) (quoting *Maduike v. Agency Rent–A–Car,* 953 P.2d 24, 26 (1998)) (internal quotation marks omitted).

Whether an offending action is "sufficiently outrageous" to support a claim for intentional infliction of distress is an objective, not subjective, analysis. *See Villagomes v. Lab. Corp. of Am.*, 783 F. Supp. 2d 1121, 1126 (D. Nev. 2011). Moreover, as previously discussed, there is a dispute of material fact regarding whether adequate or effective communication was established even though ASL interpreters were not present during the course of decedent's treatment.

Thus, plaintiff cannot show that the defendants' actions were objectively "outrageous" because, based on the evidence in the record, the possibility exists that the communication between defendants and the decedent was sufficient to impart important medical information or that defendants' accommodations were otherwise reasonable. *See Bonner* 857 F.2d at 563. Thus, it cannot be determined at this point in the current litigation that the lack of ASL interpreters was

**James C. Mahan**
**U.S. District Judge**

objectively "extreme" or "outrageous" due to a genuine dispute of material fact whether the defendants' actions were tolerable or even reasonable. *See id.*; *see also Okeke*, 927 F. Supp. 2d at 1029.

### IV. Conclusion

In summary, plaintiff offers insufficient evidence and discussion of Mrs. Ervine's mode of communicating with the relevant medical professionals to entitle him to summary judgment for his Rehabilitation Act and state law claims because defendant's arguments indicate that a dispute of material fact exists regarding those causes of action. Yet, plaintiff does make a sufficient showing regarding Mrs. Ervine's communication needs to show a dispute of material fact with respect to defendants' motions for summary judgment. However, plaintiff's NIED allegations must be limited to those dates where Mr. Ervine was present during the instances that communication was allegedly at issue.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that plaintiff Sie Ervine's motion for summary judgment (ECF No. 91) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that defendants Georges Tannoury, M.D. and Georges Tannery's motion for summary judgment (ECF No. 92) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that defendant Desert View's motion for summary judgment (ECF No. 93) be, and the same hereby is, GRANTED IN PART and DENIED IN PART, consistent with the foregoing.

DATED September 26, 2016.

                                                          UNITED STATES DISTRICT JUDGE